ASHLEY VINSON CRAWFORD (SBN 257246)
DANIELLE C. GINTY (SBN 261809)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, CA 94104-1036
Telephone:     (415) 765-9500
Facsimile:     (415) 765-9501
Email:      avcrawford@akingump.com
            dginty@akingump.com

Attorneys for Defendant
Hummingbird Funds, LLC d/b/a
Blue Trust Loans

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| OLGA SHMAKOVA, GEOFFREY HASBROOK, on behalf of themselves and all persons similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>HUMMINGBIRD FUNDS, LLC D/B/A BLUE TRUST LOANS, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. 5:19-cv-01284-NC<br><br>[Assigned to Hon. Nathanael Cousins]<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>Date:     November 13, 2019<br>Time:     1:00 p.m.<br>Ctrm:     5<br><br>Action Filed:  March 10, 2019 |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 13, 2019, or as soon thereafter as the matter may be heard in the courtroom of the Honorable Nathanael Cousins, Courtroom 5, 4th Floor, located at 280 South 1st Street, San Jose, CA 95113, Defendant Hummingbird Funds, LLC, d/b/a Blue Trust Loans ("Hummingbird") will and hereby does move for an order, pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, compelling Plaintiffs Olga Shmakova and Geoffrey Hasbrook to arbitrate the claims asserted in their Second Amended Complaint (ECF No. 30, "Complaint").

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Trina Starr filed herewith; the papers, records, and pleadings on file herein; and all other evidence or argument that the parties may submit to the Court at or prior to the hearing.

Dated:  September 10, 2019                    AKIN GUMP STRAUSS HAUER & FELD LLP


By  */s/ Ashley Vinson Crawford*
                        Ashley Vinson Crawford
                        Danielle C. Ginty

Attorneys for *Defendant Hummingbird Funds, LLC d/b/a/ Blue Trust Loans*

# Table of Contents

**Page(s)**

I.  INTRODUCTION ............................................................................................1

II. BACKGROUND .............................................................................................2

    A.  Plaintiffs' Allegations Against Hummingbird Arise From The Loan Agreements. ..........2

    B.  The Loan Agreements Contain An Enforceable Arbitration Agreement. ........................2

III. THE COURT SHOULD COMPEL ARBITRATION ....................................................4

    A.  The Loan Agreement Contains An Arbitration Provision. ...............................4

    B.  The Court Must Enforce The Delegation Provision. ......................................7

        1.  The Loan Agreements include a delegation provision........................................7

        2.  The delegation provision is enforceable. ............................................8

    C.  Even If The Court Addresses The Validity Of The Arbitration Agreement, The Agreement Is Valid And Enforceable. ...........................................................11

    D.  If Necessary, The Court Should Sever The Choice-Of-Law Provision And Render The Tribal Dispute Resolution Procedures And Class Waivers Enforceable.........................15

    E.  The Court Should Enforce The Class Action Waivers.....................................17

IV. CONCLUSION..............................................................................................17

1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ............................................................................................ 13

*AMF Inc. v. Brunswick Corp.*,
   621 F. Supp. 456 (E.D.N.Y. 1985) ...................................................................... 5

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ........................................................... 1, 9, 10, 16

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ................................................................................. 12, 16

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013) ............................................................................................ 15

*Banks v. CashCall, Inc.*,
   188 F. Supp. 3d 1296 (M.D. Fla. 2016) .............................................. 8, 14

*Brack v. Omni Loan Co, Ltd.*,
   164 Cal. App. 4th 1312 (2008) ..................................................................... 16

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ................................................................... 8, 9

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (9th Cir. 2010) ........................................................................ 12

*Brookwood v. Bank of Am.*,
   45 Cal. App. 4th 1667 (1996) .......................................................................... 9

*Brown v. W. Sky Fin., LLC*,
   84 F. Supp. 3d 467 (M.D.N.C. 2015) ......................................................... 11

*Centigram Argentina, S.A. v. Centigram Inc.*,
   60 F. Supp. 2d 1003 (N.D. Cal. 1999) ......................................................... 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...................................................................... 12

*Creative Telecomms., Inc. v. Breeden*,
   120 F. Supp. 2d 1225 (D. Haw. 1999) ................................................... 4, 5

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................... 2, 12

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*,
   638 F.3d 367 (1st Cir. 2011) ........................................................................... 7

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ................................................................. 16

*Ferguson v. Corinthian Colls., Inc.*,
    733 F.3d 928 (9th Cir. 2013) ................................................................. 13

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
    131 F.3d 1336 (9th Cir. 1997) ........................................................... 14, 15

*Gannon v. Circuit City Stores, Inc.*,
    262 F.3d 677 (8th Cir. 2001) ................................................................. 16

*Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 1738017
    (N.D. Cal. Apr. 8, 2015) ..................................................................... 8, 11

*Hall v. Superior Court*,
    150 Cal. App. 3d 411 (1983) ................................................................. 16

*Hosp. v. Mercury Constr. Corp. [Moses H. Cone]*,
    460 U.S. 1 (1983) ........................................................................... 5, 7, 16

*Howard Elec. & Mech. Co. v. Frank Briscoe Co.*,
    754 F.2d 847 (9th Cir. 1985) ................................................................... 5

*Jackson v. Payday Financial, LLC*,
    764 F.3d 765 (7th Cir. 2014) ................................................................. 10

*Kaltwasser v. AT&T Mobility LLC*,
    812 F. Supp. 2d 1042 (N.D. Cal. 2011) ................................................. 13

*Kassbaum v. Steppenwolf Prods., Inc.*,
    236 F.3d 487 (9th Cir. 2000) ("We must read the words of the 1980 contract in
    context.") ............................................................................................... 6

*Kemph v. Reddam*,
    No. 13 CV 6785, 2015 WL 1510797 (N.D. Ill. Mar. 27, 2015) .............. 14

*Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662
    (N.D. Cal. Mar. 18, 2016) ......................................................... 1, 7, 9, 10

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ........................................................................... 5

*Lennar Homes of Cal., Inc. v. Stephens*,
    232 Cal. App. 4th 673 (2014) ............................................................... 16

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................................. 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................. 13

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013) ............................................................... 16

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ................................................................................. 10

*Narula v. Delbert Servs. Corp.*,
    No. 13–15065, 2014 WL 3752797 (E.D. Mich. July 30, 2014) ............................ 17

*Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*,
    207 F.3d 21 (1st Cir. 2000) ...................................................................................... 11

*Parnell v. CashCall, Inc.*,
    804 F.3d 1142 (11th Cir. 2015) .................................................................................. 9

*Rent-A-Ctr., West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................................*passim*

*Sakkab v. Luxottica Retail N. Am., Inc.*,
    803 F.3d 425 (9th Cir. 2015) ................................................................................... 13

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ........................................................................................... 15, 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.*
    *Liab. Litig.*,
    838 F. Supp. 2d 967 (C.D. Cal. 2012) ................................................................... 1, 7

*United States v. Williams*,
    553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008) ........................................ 6

*Wasyl, Inc. v. First Bos. Corp.*,
    813 F.2d 1579 (9th Cir. 1987) .............................................................................. 4, 5, 7

*Williams v. CashCall, Inc.*,
    92 F. Supp. 3d 847 (E.D. Wis. 2018) ............................................................. 8, 11, 14

*Wolsey, Ltd. v. Foodmaker, Inc.*,
    144 F.3d 1205 (9th Cir. 1998) ............................................................................. 1, 5, 16

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011), abrogated on other grounds by *Lorenzo v. Sec. &*
    *Exch. Comm'n*, 139 S. Ct. 1094 (2019) ...................................................................... 6

*Yaroma v. CashCall, Inc.*,
    130 F. Supp. 3d 1055 (E.D. Ky. 2015) .................................................................... 14

**Statutes**

9 U.S.C. § 2 ............................................................................................................... 1, 4, 12

Cal. Civ. Proc. Code § 1641 ............................................................................................. 7

Cal. Civ. Proc. Code § 1670.5 ......................................................................................... 16

Cal. Fin. Code § 22100 (a) .............................................................................................. 15

Cal. Fin. Code § 22151 .................................................................................................... 15

Cal. Fin. Code § 22162 ................................................................................................ 15

Cal. Fin. Code § 22303 ................................................................................................ 15

Federal Arbitration Act ................................................................................................. 5

Regulatory Code § 1.1 .................................................................................................. 3

Regulatory Code § 2.401 ......................................................................................... 3, 15

Regulatory Code § 2.602 ................................................................................... 4, 13, 14

Regulatory Code § 2.603 ....................................................................................... 4, 15

Regulatory Code § 2.803 ............................................................................................ 14

Regulatory Code § 2.902 ............................................................................................ 14

Regulatory Code § 2.903 ............................................................................... 10, 11, 14

Regulatory Code § 2.903(4) ........................................................................................ 14

Regulatory Code § 2.903(5) .......................................................................................... 4

Regulatory Code § 6.3 ........................................................................................... 14, 15

**Other Authorities**

Fed. R. Civ. P. 12(h)(3) ................................................................................................ 1

## I.      INTRODUCTION

Plaintiffs entered into written loan agreements with Hummingbird (the "Loan Agreements") that contain clear and conspicuous agreements to arbitrate all disputes arising out of the Loan Agreements ("Arbitration Agreements").  As Plaintiffs have no basis for avoiding the Arbitration Agreements, Plaintiffs' claims belong in arbitration, not this Court.[1]

First, the dispute resolution procedures the parties agreed to clearly meet the broad definition of arbitration under applicable federal and state law.  *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1998).  Consequently, the Federal Arbitration Act ("FAA") governs this dispute.  9 U.S.C. § 2.

Second, the Arbitration Agreements contain a clear delegation clause, requiring that threshold issues concerning the validity and scope of the Arbitration Agreements be submitted to the arbitral forum.  *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  Both federal and California courts routinely enforce such delegation provisions assigning the question of arbitrability to the arbitrator. *Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  Accordingly, this Court needs to decide only whether an agreement to arbitrate exists, and need not decide any other issues related to arbitrability or to this dispute.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 982 (C.D. Cal. 2012).

Third, even if the Court were to reach the issue of arbitrability, Plaintiffs here are bound by the Arbitration Agreements that they voluntarily entered into.  Under the FAA, for a claim to be arbitrable, it need only (i) fall under the terms of the arbitration agreement, and (ii) not be unenforceable under some other principle of contract interpretation or construction, such as fraud, duress or

---

[1] Hummingbird is concurrently moving (i) to dismiss the case for lack of subject matter jurisdiction, (ii) to dismiss the case pursuant to the Loan Agreement's forum selection clause and the doctrine of tribal exhaustion, and (iii) to strike the class allegations in the Complaint.  The motion to dismiss for lack of subject matter jurisdiction should be decided first.  Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  This motion to compel arbitration should be decided second, and only if the Court finds that the Loan Agreements do not require arbitration should the Court decide the motion to dismiss pursuant to the Loan Agreement's forum selection clause and the doctrine of tribal exhaustion.  The Court will only need to decide the motion to strike the class allegations if all other motions are denied.

unconscionability.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Here, Plaintiffs'

claim falls under the broad scope of the Arbitration Agreements, and the Arbitration Agreements are

enforceable under basic contract principles.  To the extent any provision of the Arbitration Agreements

is found unenforceable, the provision should be severed and the remainder of the Arbitration

Agreements enforced.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations Against Hummingbird Arise From The Loan Agreements.

The Complaint alleges that Plaintiff Shmakova obtained two loans from Hummingbird in

January 2018, and Plaintiff Hasbrook obtained one loan from Hummingbird in April 2018 (the "Loan

Agreements").  Compl. ¶¶ 19, 20, 21.  On the basis of these loans, Plaintiffs seek to represent a class

that consists of "All California residents who, on or after March 11, 2015, signed Defendant's

'Consumer Installment Loan Agreement' that prohibits arbitration of disputes and who paid back at

least one dollar to Defendant."  *Id.* ¶ 6.  Plaintiffs further allege that "all Class Members executed

substantially identical form agreements prepared by Defendant, all contracts identified Defendant as

the lender and imposed similar finance charges."  *Id.*  ¶ 10.

Plaintiffs claim that Hummingbird violated California's Unfair Competition Law by offering

loans that allegedly violated the California Financing Law.  *Id.*  ¶¶ 36, 37.

### B.    The Loan Agreements Contain An Enforceable Arbitration Agreement.

Hummingbird is an entity licensed by the LCO Tribe to engage in the consumer finance

business.  Declaration of Trina Starr ("Starr Decl."), Ex. K (Hummingbird license).  By voluntarily

entering into the Loan Agreements, Plaintiffs agreed to pursue any disputes arising under those

agreements through the Tribal Dispute Resolution Procedures.  Plaintiffs' Loan Agreements with

Hummingbird each contain the same arbitration provision.  In the arbitration provision, Plaintiffs and

Hummingbird agreed that:

> TRIBAL DISPUTE RESOLUTION PROCEDURE:  As an accommodation
> to consumers, the Tribe has established a Tribal Dispute Resolution
> Procedure (the "Procedure") to review and consider any and all types of
> complaints made by or on behalf of consumers relating to or arising from
> the Agreement.  The Procedure is found in the Tribal Consumer Financial
> Services Regulatory Code.  You may request a copy of the Tribal Consumer
> Financial Services Regulatory Code by written request mailed along with a

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

self-addressed postage paid return envelope to Tribal Consumer Financial Services Code Request, Attn:  Regulatory Agent, LCO P.O. Box 1754, Hayward, WI 54843.  We and the Tribe intend and require, to the extent permitted by law, for any complaint lodged, filed, or otherwise submitted by you or on your behalf to follow the Procedure.  Under the Procedure, if you have concerns about our operation or otherwise believe you have been aggrieved by some aspect of our operation or any part of our business, you shall direct your concerns or dispute in the first instance to our management, either orally or in writing.  Your complaint shall be considered similar in nature to a petition for redress submitted to a sovereign government, without waiver of sovereign immunity and exclusive jurisdiction, and does not create any binding procedural or substantive rights for a petitioner.  In the event that you are dissatisfied with our initial determination, you may request review of the initial determination by submitting such request in writing to the Tribal Consumer Financial Services Regulatory Authority ("Authority"), LCO P.O. Box 1754, Hayward, WI 54843, no later than ten (10) days after receiving our initial determination.  You will have the opportunity to be heard regarding the dispute, in person or through telephonic conference.  You may be represented by legal counsel at your own expense.  A consumer may then appeal an Authority opinion by submitting such request in writing to the Tribal Governing Board within twenty (20) days of receiving the Authority's final written decision.  Any decision of the Tribal Council on appeal shall be final and not subject to further appeal.  Any determination by or on behalf of the Tribe or Tribal Consumer Financial Services Regulatory Authority, whether procedural or substantive, shall be made by the Tribe in its sovereign discretion.

Starr Decl., Ex. L at 16, Ex. M at 16, Ex. N at 16.  The parties further agreed that:

The Tribal Dispute Resolution Procedure has been created by the Tribe as a courtesy to consumers and is the sole and exclusive dispute resolution mechanism for disputes and claims arising under this Agreement. THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS . . . (A) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; (B) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and (C) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

*Id.*, Ex. L at 16-17, Ex. M at 16-17, Ex. N at 16-17.

The Tribal Consumer Financial Services Regulatory Code (the "Regulatory Code") referenced in the Loan Agreements governs entities engaged in consumer finance transactions either with the LCO Tribe's members, or for the benefit or under the control of the LCO Tribe, including Hummingbird. *Id.*, Ex. J (Regulatory Code § 2.103).  Under the Regulatory Code, entities engaged in consumer financial transactions are required to obtain a license from the LCO Tribe.  *Id.* (Regulatory Code §

2.401).  Moreover, the Regulatory Code requires that licensed entities comply with applicable federal consumer financial laws, and generally prohibits licensed entities from engaging in fraudulent business practices.  *Id.* (Regulatory Code §§ 2.602, 2.603).

The Regulatory Code also provides a mechanism for consumers to address disputes with licensed entities that allegedly violated some provision of the Regulatory Code.  *Id.*  (Regulatory Code §§ 2.901-2.903.).  The dispute resolution procedures outlined in the Regulatory Code include an informal complaint process, investigation and written discovery, a formal hearing before the Tribal Consumer Financial Services Regulatory Authority (the "Regulatory Authority"), a written opinion, and the right to an appeal.  *Id.*  The Regulatory Code also outlines the scope of the Regulatory Authority's duties and powers over the dispute resolution procedures throughout each step of the process.  *Id.*  The Regulatory Code further provides, "[a]s an alternative or supplement to the consumer dispute resolution procedures set forth in this Section, the Governing Board, in its sole discretion, may provide on a case-by-case basis dispute resolution procedures by outside service providers or tribunals on such terms and conditions as determined by the Governing Board."  *Id.*  (Regulatory Code § 2.903(5)).

## III.     THE COURT SHOULD COMPEL ARBITRATION

### A.     The Loan Agreement Contains An Arbitration Provision.

Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Four criteria determine whether the FAA applies to an agreement: "(1) there must be a written provision for arbitration in the Agreement; (2) the Agreement must evidence a transaction involving commerce; (3) the party seeking to compel arbitration must not be in default in proceeding with such arbitration; and (4) the Court must be satisfied that the issues involved in the action are referable to arbitration under the Agreement."  *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1231 (D. Haw. 1999).

The FAA does not define "arbitration."[2]  *Wasyl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987).  However, generally, "'[i]f the parties have agreed to submit a dispute for a decision by

---

[2] Federal law governs the question of whether an agreement calls for arbitration.  *See Wasyl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1581 (9th Cir. 1987) ("Because the contracts involve commerce, the

a third party, they have agreed to arbitration.'" *Wolsey*, 144 F.3d at 1208 (quoting *AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1985)).  Importantly, the word "arbitration" need not be used for a process to qualify as arbitration under the FAA.  *Id.* ("No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the Act.") (internal citations omitted).  Moreover, because there is a "strong congressional policy favoring arbitration," arbitration agreements should be construed liberally, and all ambiguities must be resolved in favor of arbitration.  *Howard Elec. & Mech. Co. v. Frank Briscoe Co.*, 754 F.2d 847, 850 (9th Cir. 1985) (citing *Hosp. v. Mercury Constr. Corp. [Moses H. Cone]*, 460 U.S. 1, 22-23 (1983)); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019) ("[W]e have repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration.").

Here, the parties plainly agreed to arbitrate any disputes related to the Loan Agreements.  The Loan Agreements set forth Tribal Dispute Resolution Procedures, which are overseen and administered by the Regulatory Authority, to "review and consider any and all types of complaints made by or on behalf of consumers relating to or arising from the Agreement."  Starr Decl., Ex. L at 1, Ex. M at 1, Ex. N at 1.  The Loan Agreements further state: "You and we agree that any controversies that may arise hereunder shall be resolved exclusively by the Tribal Dispute Resolution Procedures as set forth in the Tribal Consumer Financial Services Regulatory Code."  *Id.*  While the provision does not include the word "arbitration," no "magic words … are needed" under the FAA.  *Wolsey*, 144 F.3d at 1208.  The Loan Agreements call for resolution of disputes by a third party, the Regulatory Authority.  This constitutes arbitration under the broad scope of the FAA.  *Id.*  In any event, to the extent there is an ambiguity, the FAA requires that the ambiguity be interpreted in favor of arbitration.  *Lamps Plus*, 139 S. Ct. at 1418; *Creative Telecomms.*, 120 F. Supp. 2d at 1239 n.18 ("The policy that all ambiguities be resolved in favor of arbitration must govern.").

Hummingbird anticipates that Plaintiffs will argue that the class waiver provision in the Loan Agreements precludes a finding that the agreement requires arbitration.  This argument is wrong

---

question of arbitrability is controlled by federal law.")  State law should be applied only to determine whether an agreement calls for arbitration where it is not inconsistent with federal law.  *Id.*

Notice of Motion and Motion to Compel Arbitration                    Case No. 5:19-cv-01284-NC

1   because the provision concerning arbitration merely prohibits arbitration of class claims, not any

2   arbitration pursuant to the Tribal Dispute Resolution Procedures whatsoever.  The provision states:

**All disputes including any Representative Claims against us and/or related third parties shall be resolved by the Tribal Dispute Resolution Procedure only on an individual basis with you.  THEREFORE, NO LITIGATION OR ARBITRATION IS AVAILABLE AND NO JUDGE OR ARBITRATOR SHALL CONDUCT CLASS PROCEEDINGS; THAT IS, YOU SHALL BE INELIGIBLE TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN LITIGATION OR ARBITRATION.**

8   Starr Decl., Ex. L at 17, Ex. M at 17, Ex. N at 17 (original emphasis).

9          While the provision states that "no litigation or arbitration is available," the phrase is located in

10   the section of the agreement intended to prevent any type of litigation or arbitration of *class*

11   *proceedings*.  *Id.*, Exs. L, M and N, at 1.  When interpreting a term in a contract, under the canon of

12   *noscitur a sociis* courts should consider the language immediately surrounding the term at issue.

13   *United States v. Williams*, 553 U.S. 285, 294, 128 S. Ct. 1830, 1839, 170 L. Ed. 2d 650 (2008) (noting

14   in the context of statutory construction that a term's meaning is "narrowed by the commonsense canon

15   of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring

16   words with which it is associated."); *see also WPP Luxembourg Gamma Three Sarl v. Spot Runner,*

17   *Inc.,* 655 F.3d 1039, 1051 n.3 (9th Cir. 2011), abrogated on other grounds by *Lorenzo v. Sec. & Exch.*

18   *Comm'n*, 139 S. Ct. 1094 (2019) (using *noscitur a sociis* to interpret a provision of a contract).  Here,

19   the "no litigation or arbitration" language immediately follows the sentence making clear that all

20   claims must be decided pursuant to the Tribal Dispute Resolution Procedures *on an individual basis*

21   *only* and is directly preceded by the qualifier, "[t]herefore[.]"  The provision does not refer to or negate

22   the Loan Agreements' requirement that the parties submit any disputes under the agreement to the

23   Regulatory Authority pursuant to the Tribal Dispute Resolution Procedures.  Interpreting the provision

24   to prohibit any arbitration whatsoever, rather than just the arbitration of class claims, would negate and

25   render illusory the remaining provisions of the Loan Agreements requiring arbitration before the

26   Regulatory Authority pursuant to the Tribal Dispute Resolution Procedures.  *See Kassbaum v.*

27   *Steppenwolf Prods., Inc.*, 236 F.3d 487, 491 (9th Cir. 2000) ("We must read the words of the 1980

28   contract in context."); *Centigram Argentina, S.A. v. Centigram Inc.*, 60 F. Supp. 2d 1003, 1011 (N.D.

1    Cal. 1999) ("Provisions in a contract, however, are not to be considered in a vacuum, but instead the

2    entirety of the contract must be interpreted together.") (citing Cal. Civ. Code § 1641).  Any possible

3    interpretation to the contrary is trumped by the FAA's policy favoring arbitration.  *See Wasyl*, 813 F.2d

4    at 1581-82 ("The Act 'establishes that, as a matter of federal law, any doubts concerning the scope of

5    arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

6    construction of the contract language itself or an allegation of waiver, delay, or a like defense to

7    arbitrability.'") (quoting *Moses H. Cone*, 460 U.S. at 24-25); *see also Dialysis Access Ctr., LLC v. RMS*

8    *Lifeline, Inc.*, 638 F.3d 367, 382 n.14 (1st Cir. 2011) ("Assuming arguendo that said state law tenet

9    requires a result different from the one at which we arrive today, we find that the strong federal policy

10   in favor of arbitration trumps the tenet.").[3]

11       **B.     The Court Must Enforce The Delegation Provision.**

12              1.     The Loan Agreements include a delegation provision.

13       Under the terms of the Loan Agreements, the parties agreed to submit any questions regarding

14   the scope and application of the Arbitration Agreements to arbitration.  Based on this provision, the

15   court must defer to the arbitrator any questions or challenges to the agreement to arbitrate.

16       The Supreme Court has recognized that the parties can agree to arbitrate the "gateway"

17   question of arbitrability if they "clearly and unmistakably delegate that antecedent decision itself to an

18   arbitrator."  *Khraibut*, 2016 WL 1070662, at *2 (citing *Rent-A-Ctr.*, 561 U.S. at 78).  "An agreement to

19   arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration

20   asks the federal court to enforce[.]"  *Rent-A-Ctr.*, 561 U.S. at 70.  Where there is a clear and

21   unmistakable "expression of the parties' intent to submit to arbitration the issue of arbitrability . . . the

22   district court's focus would ordinarily be limited to the delegation provision rather than the arbitration

23   provision containing the delegation provision."  *In re Toyota Motor*, 838 F. Supp. 2d at 982; *see also*

24   *Rent-A-Ctr.*, 561 U.S. at 68-69.  In other words, where the parties agreed to delegate the issue of

---

26   [3] If the Court finds that the Loan Agreements do not contain an arbitration provision governed
     by the FAA and therefore denies this Motion to Compel Arbitration, the Court should, in the alternative,
27   dismiss this case under the doctrine of forum non conveniens, for the reasons explained in Defendant's
     concurrently filed Motion In The Alternative To Dismiss Or Stay For Forum Non Conveniens.  Should
28   this Court grant the Motion to Compel Arbitration, the Court need not reach the issue of dismissal under
     the doctrine of forum non conveniens.

arbitrability to the arbitral forum, the court should not render a decision on the enforceability of the arbitration provision as a whole, but should instead limit its focus to the enforceability of the delegation provision.  *Rent-A-Ctr.*, 561 U.S. at 69.

The Arbitration Agreements here clearly delegate to the arbitrator the issue of its validity.  Starr Decl., Ex. L at 11, Ex. M at 11, Ex. N at 11.  With respect to delegation, the Loan Agreements state that for the "purposes of the Tribal Dispute Resolution Procedure paragraph, the words 'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation: (a) all claims, disputes or controversies arising from or relating directly or indirectly to the signing of this Agreement, *the validity and scope of these provisions and any claim or attempt to set aside these provisions*."  *Id.*, Ex. L at 17, Ex. M at 17, Ex. N at 17 (emphasis added).  Courts have routinely found that such language indicates a clear intent to delegate the issue of arbitrability to an arbitrator.  *See Banks v. CashCall, Inc*., 188 F. Supp. 3d 1296, 1302-03 (M.D. Fla. 2016) (finding that an arbitration provision contained a delegation clause where it required arbitration of "any issue concerning the validity, enforceability, or scope of [the] [L]oan or the [a]rbitration agreement."); *Williams v. CashCall, Inc*., 92 F. Supp. 3d 847, 850, 854 (E.D. Wis. 2018) (same); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (finding that the contract contained a delegation provision when the contract merely stated that it incorporated the AAA arbitration rules, "one of which provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement'"); *Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 1738017, at *4 (N.D. Cal. Apr. 8, 2015) (finding with respect language nearly identical to the language in Plaintiffs' arbitration agreements that "the parties clearly and unmistakably delegated the issue of validity of the Arbitration Provision to the arbitrator.").  Accordingly, based on the unambiguous language of the Loan Agreements, any challenges to the agreement to arbitrate must be resolved in arbitration through the Tribal Dispute Resolution Procedure, not in this Court.

2.      The delegation provision is enforceable.

If there exists a clear and unmistakable delegation provision, "the only remaining question is whether the particular agreement *to delegate* arbitrability . . . is itself unconscionable."  *Brennan,* 796 F.3d at 1132 (citing *Rent-A-Ctr.*) (emphasis in original).  State law, rather than federal law, governs

1    whether an arbitration agreement is unconscionable.  *Rent-A-Ctr.,* 561 U.S. at 75 (discussing whether

2    delegation provision is unconscionable under Nevada law); *Parnell v. CashCall, Inc.*, 804 F.3d 1142,

3    1149 (11th Cir. 2015) (discussing whether delegation provision is unconscionable under Georgia law);

4    *Brennan*, 796 F.3d at 1128 (discussing whether delegation provision is unconscionable under

5    California law).

6         Under California law, "unconscionability has both a 'procedural' and a 'substantive' element,

7    the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly

8    harsh' or 'one-sided results.'"  *Khraibut,* 2016 WL 1070662, at *8 (quoting *Armendariz,* 24 Cal. 4th at

9    114).  Both elements must be present to find an agreement unconscionable.  *Id.*

10        While there may be a de minimis amount of procedural unconscionability in this case due

11   solely to the fact that the Loan Agreements at issue are contracts of adhesion, that alone is insufficient

12   to show that the delegation provision is unconscionable.  *See Armendariz,* 24 Cal. 4th at 114 ("If the

13   contract is adhesive, a court must then determine whether other factors are present that, under

14   established legislative or judicial rules, operate to render it unenforceable.") (citation omitted).

15   Moreover, Plaintiffs' agreement to the provision was not the result of unfair surprise.  Under California

16   law, a person who signs a contract is presumed to know the terms of the contract and to assent to them.

17   *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674 (1996).  Here, the delegation provision is

18   included in plain and clear language in the Loan Agreements.  Plaintiffs admit that they signed the

19   Loan Agreements.  Compl. ¶¶ 19-21.  By signing the Loan Agreements, Plaintiffs specifically

20   acknowledged that they understood its terms:  "YOU ACKNOWLEDGE THAT:  (A) YOU HAVE

21   READ, UNDERSTAND, AND AGREE TO ALL OF THE TERMS AND CONDITIONS OF THIS

22   AGREEMENT."  Starr Decl., Ex. L at 22, Ex. M at 22, Ex. N at 22.

23        The delegation provision is likewise not substantively unconscionable.  "Substantive

24   unconscionability exists where a provision produces overly harsh or one-sided results."  *Khraibut,*

25   2016 WL 1070662, at *9 (citing *Armendariz,* 24 Cal. 4th at 114).  The Loan Agreements' delegation

26   clause is not overly harsh here.

27        First, the provision is mutual in its application because the Tribal Dispute Resolution

28   Procedures apply equally to both parties to the litigation, and because both parties are subject to LCO

Tribal Law under the terms of the agreement. *Armendariz,* 24 Cal. 4th at 118 ("lack of mutuality" in an arbitration agreement is evidence of unconscionability); Starr Decl., Ex. L at 1, Ex. M at 1, Ex. N at 1 ("[I]n the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute. You and we agree that any controversies that may arise hereunder shall be resolved exclusively by the Tribal Dispute Resolution Procedures as set forth in the Tribal Consumer Financial Services Regulatory Code.").  Second, neither the Regulatory Code nor the Tribal Dispute Resolution Procedures require the Plaintiffs to pay fees to initiate or prosecute their dispute. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1292 (9th Cir. 2006) (stating that imposition of unreasonable fees on a party may be a factor in determining unconscionability); Starr Decl., Ex. J (Regulatory Code).  Third, the Tribal Dispute Resolution Procedures do not unfairly limit discovery, because the Regulatory Code specifically provides that discovery is available to the parties prior to a formal hearing on the dispute. *See Khraibut*, 2016 WL 1070662, at *9 (provision that unfairly limits discovery may be unconscionable); Starr Decl., Ex. J (Regulatory Code § 2.903(2)) ("In connection with a dispute, the Authority may conduct and issue such review, interviews, sworn statements, depositions, and other discovery as the Authority requests.").

Finally, the provision does not unfairly carve out access to courts because the tribal forum is not an illusory forum.  *Cf. Jackson v. Payday Financial, LLC*, 764 F.3d 765, 779 (7th Cir. 2014) ("It hardly frustrates FAA provisions to void an arbitration clause on the ground that it contemplates a proceeding for which the entity responsible for conducting the proceeding has no rules, guidelines, or guarantees of fairness.").  Here, unlike in *Jackson*, the LCO Tribe has an extensive body of rules related to consumer finance transactions, as outlined in the Regulatory Code.  *See generally*, Starr Decl., Ex. J (Regulatory Code).  Moreover, unlike in *Jackson*, the Regulatory Code specifically authorizes a formal dispute resolution procedure, which includes a hearing before the Regulatory Authority.  *Id.* (Regulatory Code § 2.903).  And, again, unlike in *Jackson*, the Regulatory Code outlines the scope of the Regulatory Authority's duties and powers over the dispute resolution procedure.  *Id*  Indeed, the Regulatory Code sets detailed rules of conduct that guide the dispute resolution process from the initial informal complaint, through a formal hearing, and ultimately through appeal.  *Id.* (Regulatory Code §§ 2.901-2.903).  In addition to a formal hearing, the Regulatory Code provides for investigation and

discovery, a formal written opinion by the Regulatory Authority, and an appeals process. *Id.*
(Regulatory Code § 2.903(1)-(3)).  Finally, the Regulatory Code also provides, "[a]s an alternative or supplement to the consumer dispute resolution procedures set forth in this Section, the Governing Board, in its sole discretion, may provide on a case-by-case basis dispute resolution procedures by outside service providers or tribunals on such terms and conditions as determined by the Governing Board." *Id.*  (Regulatory Code § 2.903(5).  Far from illusory, the Tribal Dispute Resolution forum is a valid and viable forum capable of fairly resolving the controversy in this case.

Furthermore, to the extent Plaintiffs argue that the delegation provision is unconscionable because tribal arbitration is inherently biased, courts routinely reject such unfounded accusation. *See Brown v. W. Sky Fin., LLC*, 84 F. Supp. 3d 467, 480 (M.D.N.C. 2015) (rejecting argument that tribal forum is inherently "biased and improper"); *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 34 (1st Cir. 2000) (in the context of tribal lending, rejecting the assertion that tribal council is inherently biased in a suit involving tribal entities, solely due to connection to tribe).

Courts in the tribal lending context have rejected unconscionability challenges to similar delegation clauses. *Williams*, 92 F. Supp. 3d at 854 (rejecting argument that arbitration agreement was unconscionable and sending claims to arbitration to resolve, among other things, the enforceability of the arbitration agreement); *Gilbert*, 2015 WL 1738017, at *6 (finding arbitration agreement and delegation clause were not unconscionable because the delegation provision has a "modicum of bilaterality," the argument that the designated arbitrator would not be "competent" was "an expression of judicial hostility to arbitration," and the fee-splitting envisioned by the agreement were not per se unconscionable).  Because the parties have agreed to submit the issue of arbitrability to an arbitrator, the Court must refer the issue of the arbitration provision's enforcement to the Regulatory Authority, pursuant to the Tribal Dispute Resolution Procedures.

### C.   Even If The Court Addresses The Validity Of The Arbitration Agreement, The Agreement Is Valid And Enforceable.

Even if the Court reaches the issue of arbitrability, the Arbitration Agreements are valid and must be enforced.  The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

contract or transaction . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  "The court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If these two issues are decided in favor of arbitration, there is "no place for the exercise of discretion," and the Court must "direct the parties to proceed in arbitration."  *Dean Witter*, 470 U.S. at 218.

The party opposing arbitration has the burden of proving that the arbitration provision is invalid.  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010).  That party may avoid arbitration only by proving a defense generally applicable to all contracts.  9 U.S.C. § 2.  Thus, arbitration agreements may be invalidated only by "'contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The Loan Agreements contain a valid agreement to arbitrate, which plainly apply to this dispute.  The Loan Agreements require that the parties submit to the Tribal Dispute Resolution Procedures "any and all types of complaints made by or on behalf of customers relating to or arising from the Agreement."  Starr Decl., Ex. L at 17, Ex. M at 17, Ex. N at 17.  This expansive language covers Plaintiffs' claims in the present action, which arise out of the Loan Agreements.

Likewise, the provision is not unenforceable due to fraud, duress, or unconscionability.  The Arbitration Agreements as a whole are not unconscionable for the same reasons that the delegation provision is not unconscionable.  It is not overly harsh here because:  (1) the provision is mutual in its application; (2) it does not require Plaintiffs to pay any fees; (3) it does not unfairly limit discovery; and (4) it does not unfairly carve out access to courts for one side of agreement.  *See supra,* Section III.B.2.

While Plaintiffs will likely argue that the arbitration clause is unenforceable because it waives statutory rights,[4] Plaintiffs' argument should be rejected.  Plaintiffs here assert only state statutory

---

[4] The Loan Agreements state that: "the laws of the Tribe ('Tribal Law') will govern this Loan Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws

claims and, therefore, the rule against waiver of federal statutory rights is inapplicable.  While the Supreme Court indicated in its opinion in *Mitsubishi* that an arbitration agreement demanding the prospective waiver of a party's right to pursue federal statutory remedies might violate public policy, this rule, known as the "effective vindication rule," applies only to the prospective waiver of rights under a *federal* statute.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *see Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 241 (2013) (Kagan, J., dissenting) (arguing that effective-vindication rule should have been applied to void contractual waiver of class arbitration that, in dissent's view, "prevent[ed] the effective vindication of federal statutory rights"); *Id.* at 252 (Kagan, J., dissenting) ("When a state rule allegedly conflicts with the FAA, we apply standard preemption principles, asking whether the state law frustrates the FAA's purposes and objectives . . . ."). *Mitsubishi's* effective vindication rule is implicated only when the FAA is alleged to conflict with another federal law.  As the Plaintiffs have not alleged any violation of federal law, application of the effective vindication rule in this case is inapposite.  *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 433 n.9 (9th Cir. 2015) ("'The "effective vindication" exception, which permits the invalidation of an arbitration agreement when arbitration would prevent the "effective vindication" of a federal statute, does not extend to state statutes.'") (quoting *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 936 (9th Cir. 2013)); *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1048 (N.D. Cal. 2011) ("First, it is not clear that *Green Tree's* solicitude for the vindication of rights applies to rights *arising under state law, which are the only rights that Kaltwasser seeks to vindicate here* . . . Because *American Express* involved only federal claims, it does not help Kaltwasser in this regard.") (emphasis added).[5]

---

rules of any state.  You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law shall exclusively apply to such dispute . . ."  Starr Decl., Ex. L at 9, Ex. M at 9, Ex. N at 9.

[5] Even had Plaintiffs alleged a violation of federal consumer protection statutes, such allegations would not render the arbitration agreement unconscionable in this case.  The Regulatory Code provides that licensees, such as Hummingbird, must abide by applicable federal consumer protection statutes.  Starr Decl., Ex. J (Regulatory Code § 2.602) Under the Tribal Dispute Resolution procedures, customers may initiate a formal dispute resolution procedure to determine whether the licensee has failed to abide by the Regulatory Code.  *Id.*  (Regulatory Code §§ 2.901 *et seq.*).  Consequently, Plaintiffs would be able to vindicate their federal rights in the arbitral forum.  *Id.*  (Regulatory Code § 2.602).

Additionally, even when rights are curbed or altered slightly by proceeding in a foreign—or in this case, tribal—forum, that alone does not necessarily render an arbitration provision unenforceable. *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997) ("Although litigating in Korea will deprive FFIC of its right to proceed in rem against The Atlantic, the loss of that right is insufficient to invalidate the forum clause on public policy grounds.").  In the tribal lending context, courts have repeatedly granted motions to compel arbitration notwithstanding a choice-of-law provision that designates tribal law as the exclusive governing law. *See, e.g.*, *Banks v. CashCall, Inc.*, 188 F. Supp. 3d 1296, 1298 (M.D. Fla. 2016) (enforcing arbitration agreement where disputes were to be "subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe"); *Yaroma v. CashCall, Inc.*, 130 F. Supp. 3d 1055, 1059 (E.D. Ky. 2015) (same); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *5 (N.D. Ill. Mar. 27, 2015) (same); *Williams*, 92 F. Supp. 3d 847 (granting motion to compel and finding that arbitrator could decide enforceability of choice-of-law provision).

Moreover, here, Plaintiffs' rights under the California Unfair Competition Law are still intact, even if they are altered slightly.  The Loan Agreements are governed by the Regulatory Code, which includes a broad range of rights and protections for consumers.  For example, the Regulatory Code prohibits licensed entities such as Hummingbird from engaging in unfair, deceptive, or fraudulent practices.  Starr Decl., Ex. J (Regulatory Code § 2.603(2)(d)).  The Regulatory Code also charges licensees with compliance with federal consumer finance laws, *id*. (Regulatory Code § 2.602), and provides an enforcement mechanism that applies to licensed entities, which includes the ability to impose civil penalties and fines, *id*. (Regulatory Code § 2.803).  The Regulatory Code further provides that consumers may initiate dispute resolution procedures to seek a determination by the Regulatory Authority on whether the licensee has failed to comply with the Regulatory Code, or have otherwise been aggrieved by the operation of the licensee's business.  *Id.* (Regulatory Code § 2.902).  The Regulatory Authority may then "grant or deny a consumer complaint and grant or deny such relief, if any, as the Authority determines in its sovereign discretion." *Id.* (Regulatory Code § 2.903(3)).  A consumer who is unsatisfied with the outcome may then appeal the Regulatory Authority's decision to the Tribal Governing Board. *Id.* (Regulatory Code § 2.903(4)).

1    Plaintiffs' claim for violations of California's Unfair Competition Law are comparable to the

2   claims available under the Regulatory Code.  Both California law and the Regulatory Code require

3   those engaged in consumer lending to obtain a license from the applicable sovereign authority.  *Id.*

4   (Regulatory Code § 2.401); Cal. Fin. Code § 22100 (a).  Both California law and the Regulatory Code

5   require licensees to post their license at their place of business or on the website they use to transact

6   business.  Cal. Fin. Code § 22151; Starr Decl., Ex. J (Regulatory Code § 2.603(1)).  And finally, both

7   California law and the Regulatory Code prohibit licensees from charging interest or fees beyond

8   applicable legal limits, or engaging in any unfair, deceptive or fraudulent practices.  Cal. Fin. Code §§

9   22303, 22162; Starr Decl., Ex. J (Regulatory Code §§ 2.603(b)-(d)).  Accordingly, Plaintiffs have a full

10   and fair opportunity to vindicate their rights in the tribal forum.  *Fireman's Fund*, 131 F.3d at 1338.

11    Because the Arbitration Agreements are neither procedurally nor substantively unconscionable,

12   and because the Arbitration Agreements cover any disputes arising out of the Loan Agreements, the

13   Court should enforce the parties' Arbitration Agreements and grant the Motion to Compel Arbitration.

14    **D.    If Necessary, The Court Should Sever The Choice-Of-Law Provision And Render**
        **The Tribal Dispute Resolution Procedures And Class Waivers Enforceable.**
15

16    Even if the Court finds that the Arbitration Agreements are unconscionable, the court should

17   sever the choice-of-law provision and render the remainder of the Arbitration Agreements enforceable.

18    The Supreme Court has squarely held that "[a]n agreement to arbitrate before a specified

19   tribunal is, in effect, a specialized kind of forum-selection clause," and that a forum clause should

20   control "absent a strong showing" that enforcement would be unreasonable.  *Scherk v. Alberto-Culver*

21   *Co.*, 417 U.S. 506, 519 (1974) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972));

22   *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013).  As the Court

23   explained, "[a] contractual provision specifying in advance the forum in which disputes shall be

24   litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of

25   the orderliness and predictability essential to any international business transaction."  *Scherk*, 417 U.S.

26   at 516.  Under these principles, the Arbitration Agreements at issue here should be enforced

27   irrespective of the Court's decision regarding the enforceability of the choice-of-law provision.

28

1    While state-law rules of contracting can be a defense to arbitration agreements governed by the

2    FAA, those rules "are preempted if in practice they have a 'disproportionate impact' on arbitration or

3    'interfere[ ] with fundamental attributes of arbitration and thus create [ ] a scheme inconsistent with the

4    FAA.'"  *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) (quoting

5    *Concepcion*, 563 U.S. at 344).  Consequently, a finding that an unconscionable choice-of-law provision

6    automatically invalidates an arbitration agreement would run afoul of the Supreme Court's holding in

7    *Concepcion* and undermine the purpose of the FAA.

8    This is true because when California courts find a choice-of-law provision unenforceable

9    outside of an arbitration context due to unconscionability or any other principle of contract law, they

10   refuse to enforce the choice-of-law provision, but do not find the entire agreement unenforceable.  *See*

11   *Brack v. Omni Loan Co, Ltd.*, 164 Cal. App. 4th 1312, 1329-1330 (2008); *Hall v. Superior Court*, 150

12   Cal. App. 3d 411, 417 (1983).  To abandon this practice solely in the context of arbitration agreements

13   would be precisely the type of state-law rule that *Concepcion* nullifies as inconsistent with the policies

14   behind the FAA.  *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 (8th Cir. 2001) ("to hold entire

15   arbitration agreements unenforceable every time a particular term is held invalid . . . would represent

16   the antithesis of the 'liberal federal policy favoring arbitration agreements'") (quoting *Moses H. Cone*,

17   460 U.S. at 24).  Such a holding would contradict the FAA's clear mandate that arbitration agreements

18   be placed "upon the same footing as other contracts."  *Wolsey*, 144 F.3d at 1209 (citing *Scherk*, 417

19   U.S. at 511).

20   If California law applies to render the parties' choice of law unconscionable, it also must apply

21   to permit the Court to sever the unconscionable choice-of-law provision, and enforce the remainder of

22   the agreement to arbitrate.  Cal. Civ. Proc. §1670.5.  Indeed, the "strong legislative and judicial

23   preference is to sever the offending term and enforce the balance of the agreement."  *Dotson v. Amgen,*

24   *Inc.*, 181 Cal. App. 4th 975, 986 (2010).  This principle applies equally to arbitration provisions.

25   *Armendariz*, 24 Cal. 4th at 83 (holding the contract principle of severability applies equally to the

26   doctrine of unconscionability and should be applied to arbitration agreements); *Lennar Homes of Cal.,*

27   *Inc. v. Stephens*, 232 Cal. App. 4th 673, 688 (2014) (quoting Cal. Civ. Proc. Code § 1670.5 in holding

28   that "[i]f a court finds as a matter of law that a contract or any clause of a contract is unconscionable,

16

1  the court may 'refuse to enforce the contract, or it may enforce the remainder of the contract without

2  the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid

3  any unconscionable result.'").

4       Specifically in the context of tribal lending, when courts have found a choice-of-law provision

5  unenforceable, the courts have opted to sever the choice-of-law provision and send the claim to

6  arbitration.  *Narula v. Delbert Servs. Corp.*, No. 13–15065, 2014 WL 3752797, at *2 (E.D. Mich. July

7  30, 2014) (granting motion to compel arbitration, but severing the choice-of-law provision because of

8  absence of tribal subject matter jurisdiction:  "[T]here are no ties to any Tribal Nation and the Court,

9  therefore, finds the provisions of the Arbitration Agreement referring to tribal law and the Tribal

10  Nation inapplicable and severs them from the Agreement.").  Consequently, should this Court decide

11  that the choice of tribal law renders the Arbitration Agreements unconscionable, both California law

12  and the underlying policy of the FAA require that this Court sever the choice-of-law provision and

13  enforce the parties' agreement to arbitrate.

14       **E.      The Court Should Enforce The Class Action Waivers.**

15       As explained in Hummingbird's concurrently filed Motion To Strike The Class Allegations, if

16  the Court reaches the threshold questions of arbitrability, the Court should dismiss Plaintiffs' class and

17  representative claims based on the class action waivers included in the Arbitration Agreements.[6]

18  **IV.    CONCLUSION**

19       The parties have entered into a valid and enforceable agreement to arbitrate their disputes.

20  Accordingly, Hummingbird respectfully requests that the Court compel arbitration of Plaintiffs' claims

21  because (1) the Arbitration Agreements contain a delegation provision that requires the parties to

22  submit the issue of arbitrability to the arbitrator, and (2) even if the Court reaches the issue of

23

24

25       [6] The class waivers contained within the Arbitration Agreements provide: "THEREFORE, NO
LITIGATION OR ARBITRATION IS AVAILABLE AND NO JUDGE OR ARBITRATOR SHALL
26  CONDUCT CLASS PROCEEDINGS; THAT IS, YOU SHALL BE INELIGIBLE TO SERVE AS A
REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER
27  REPRESENTATIVE CAPACITY FOR OTHERS IN LITIGATION OR ARBITRATION."  Starr Decl.,
Ex. L at 17, Ex. M at 17, Ex. N at 17.

28

Notice of Motion and Motion to Compel Arbitration                                Case No. 5:19-cv-01284-NC

arbitrability, the Arbitration Agreements, including the class waiver agreements, here are valid and enforceable.

Dated:  September 10, 2019

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By      */s/ Ashley Vinson Crawford*
Ashley Vinson Crawford
Danielle C. Ginty

Attorneys for *Defendant Hummingbird Funds, LLC d/b/a/ Blue Trust Loans*